UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| RAMIREZ CAPITAL SERVICES, LLC and WILCO DATA, LLC, | |
| Plaintiffs, | Case No. |
| vs. | |
| JARED MCMAHAN, | |
| Defendant. | |

## PLAINTIFFS RAMIREZ CAPITAL SERVICES, LLC AND WILCO DATA, LLC'S VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DAMAGES

Plaintiffs Ramirez Capital Services, LLC ("Ramirez Capital") and Wilco Data, LLC ("Wilco Data"), by and through their undersigned counsel, hereby respectfully submit this Verified Complaint for Injunctive Relief and Damages against Defendant Jared McMahan ("McMahan"), stating as follows:

1.      This action arises in the context of a former employment relationship between Ramirez Capital and Wilco Data and McMahan, and concerns McMahan's misappropriation of confidential and trade secret information, breach of fiduciary and contractual obligations, and other unlawful conduct and tortious actions by McMahan in violation of statutory and common law.  Ramirez Capital and Wilco Data seek injunctive relief, damages, and attorneys' fees and costs against McMahan as set forth herein.

## PARTIES, JURISDICTION, AND VENUE

2.      Ramirez Capital is a Texas limited liability company and maintains its principal place of business at 1 FM 3351, Suite 115, Boerne, Texas 78006.

3.      Wilco Data is a Texas limited liability company and maintains its principal place of business at 100 NE Loop 410, Suite 1500, San Antonio, Texas 78216.

4.      McMahan is a citizen of the State of Texas and resides at 1512 12th Street, Argyle, Texas 76226.

5.      Ramirez Capital is the employment management company for Wilco Data and other related companies.

6.      McMahan was formerly employed by Ramirez Capital as Director of Sales for Wilco Data.

7.      This Court has personal jurisdiction over McMahan because McMahan is a citizen of the State of Texas.

8.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C § 1331 because this action arises, in part, under the Constitution, laws, or treaties of the United States.

9.      This Court has subject matter jurisdiction over the state law claims herein pursuant to 28 U.S.C. § 1367 because those claims are so related that they are part of the same case or controversy.

10.     Venue is proper in the Eastern District of Texas under 28 U.S.C. § 1391 because McMahan resides in Denton County, Texas, McMahan worked remotely from his home in

Denton County, Texas, during his employment for Ramirez Capital and Wilco, and a substantial part of the events giving rise to these claims occurred in Denton County, Texas.

## FACTUAL BACKGROUND

### Wilco Data's Business and Efforts to Protect Confidential Information

11.     Wilco Data is engaged in the highly competitive business of providing implementation and management of a 340B Drug Pricing Program.

12.     The 340B Drug Pricing Program is a federal program that requires drug manufacturers to provide outpatient drugs to eligible health care organizations/covered entities at significantly reduced prices.

13.     Wilco Data works with hospitals and pharmacies to administer the 340B program and ensure compliance with applicable rules.

14.     Wilco Data maintains its principal office in San Antonio, Texas but has employees working remotely.  McMahan was such a remote-based employee.

15.     Wilco Data has clients and prospective clients located in Texas, Oklahoma, New Mexico, Georgia, and Florida.

16.     Wilco Data is unique in the 340B program marketplace because of its variety of proprietary billing models.

17.      Wilco Data develops and maintains trade secret, confidential and proprietary information (collectively, "Confidential Information"), including information regarding its billing models, customers, sales, pricing, and business strategies.  This Confidential Information was developed over time and at great expense, in part.   Developing and maintaining its

Confidential Information contributes to Wilco Data's success in the market and ability to generate business.

19. Wilco Data's Confidential Information is not known or generally available to Wilco Data's competitors or others, and any other competitor could gain a business advantage by obtaining such information.

19. Wilco Data maintains nearly all of its Confidential Information on an Excel spreadsheet that has been used by Wilco Data since 2013 (the "WD Master Spreadsheet"). The WD Master Spreadsheet contains confidential billing matrices and algorithms, the name of every pharmacy and hospital with which Wilco Data does business, all revenues, billing, and dispensing information for each pharmacy, payment histories for the pharmacies and hospitals, and Wilco Data's financial information, including revenues, margins, and cash flow. In short, the WD Master Spreadsheet contains essentially all of the information needed to operate Wilco Data's business or, if misappropriated, to compete with Wilco Data with an unfair competitive advantage.

20. Wilco Data engages in significant efforts to maintain and ensure secrecy of its Confidential Information. For example, and by no means a limitation, the WD Master Spreadsheet is maintained on a cloud server with password protected access, and access is limited only to certain employees who have a need to know and access such information in order to successfully complete their duties. The Ramirez Capital employees with access are the accounting personnel, invoicing personnel, and the sales manager for Wilco Data. Employees with access to the WD Master Spreadsheet have unique login credentials that must be entered to gain access to the database.

21.     Every employee who has access to the WD Master Spreadsheet is required to sign non-disclosure agreements.

22.     Ramirez Capital also maintains an Employee Handbook ("Handbook") setting out policies restricting its employees' use of technology, including computers, networks, email, internet, and software, at Ramirez Capital.  The Handbook, in a section entitled "Standards of Conduct" states, in relevant part:

> While not intended to be an all-inclusive list, the examples below represent behavior that is considered unacceptable in the workplace.  Behaviors such as these, as well as other forms of misconduct may result in disciplinary action, up to and including termination of employment:
>
> - Theft or inappropriate removal/possession of property
>       . . . .
> - Unauthorized disclosure of any "business secrets" or other confidential or non-public proprietary information relating to the Company's products, services, customers or processes.

23.     In section 6.3 entitled "Confidentiality," the Handbook states:

> Ramirez Capital Services LLC takes the protection of Confidential Information very seriously. "Confidential Information" includes, but is not limited to, computer processes, computer programs and codes, customer lists, customer preferences, customers' personal information, company financial data, marketing strategies, proprietary production processes, research and development strategies, pricing information, business and marketing plans, vendor information, software, databases, and information concerning the creation, acquisition or disposition of products and services.
>
> Confidential Information also includes the Company's intellectual property and information that is not otherwise public. Intellectual property includes, but is not limited to, trade secrets, ideas, discoveries, writings, trademarks, and inventions developed through the course of your employment with Ramirez Capital Services LLC and as a direct result of your job responsibilities with Ramirez Capital Services LLC. *Wages and other conditions of employment are not considered to be Confidential Information*.
>
> To protect such information, employees may not disclose any confidential or nonpublic proprietary information about the Company to any unauthorized

individual. If you receive a request for Confidential Information, you should immediately refer the request to your supervisor.

The unauthorized disclosure of Confidential Information belonging to the Company, and not otherwise available to persons or companies outside of Ramirez Capital Services LLC, may result in disciplinary action, up to and including termination of employment. If you leave the Company, you may not disclose or misuse any Confidential Information.

24.     In section 6.12 entitled "Computer, Email & Internet Usage," the Handbook provides guidelines that prohibits: "Sending or posting the Company's confidential material, trade secrets, or non-public proprietary information outside of the Company."

25.     McMahan acknowledged receipt of the Handbook and his agreement to abide by the Handbook's terms.

### McMahan's Employment with Ramirez Capital and Wilco Data

26.     On June 13, 2018, Ramirez Capital sent McMahan an offer letter relating to the position of Director of Sales for Wilco Data with a scheduled employment start date of July 16, 2018.

27.     On June 13, 2018, McMahan signed the offer letter and accepted the position at Ramirez Capital as Director of Sales for Wilco Data.

28.     As Director of Sales, McMahan was tasked with generating new business for Wilco Data and working with such clients after establishing a relationship with Wilco Data.

29.     Prior to working for Ramirez Capital and Wilco Data, McMahan had limited prior experience with 340B drug pricing programs.

30.     Prior to working for Ramirez Capital and Wilco Data, McMahan also did not know or possess any of Wilco Data's trade secrets or Confidential Information, including any of the information contained or memorialized in the WD Master Spreadsheet.

## The Confidentiality Agreement

31.     On September 13, 2019, McMahan executed a "Confidentiality Agreement" with Ramirez Capital.  A true and correct copy of the "Confidentiality Agreement" is attached as <u>Exhibit A</u>.

32.     Ramirez Capital uses the Confidentiality Agreement to protect the legitimate business interests of itself, Wilco Data, and the other companies it manages, including their Confidential Information.

33.     In the Confidentiality Agreement, McMahan acknowledges that he would "perform services which may require [Ramirez Capital] to disclose confidential and proprietary information ("Confidential Information") to [McMahan]."  (Ex. A)

34.     The Confidentiality Agreement defines "Confidential Information" to include non-public "information of any kind, nature, or description concerning any matters affecting or relating to Employee's services.  (Ex. A)

35.     In the Confidentiality Agreement, McMahan agreed, as follows:

A.  EMPLOYEE will hold the Confidential Information received from Ramirez Capital in strict confidence and shall exercise a reasonable degree of care to prevent disclosure to others.

B.  EMPLOYEE will not disclose or divulge either directly or indirectly the Confidential Information to others unless first authorized to do so in writing by Ramirez Capital.

C.  EMPLOYEE will not reproduce the Confidential Information nor use this information commercially or for any purpose other than the performance of his/her duties for Ramirez Capital.

D.  EMPLOYEE will, upon request or upon termination of his/her relationship with Ramirez Capital, deliver to Ramirez Capital any drawings, notes, documents, equipment, and materials received from Ramirez Capital or originating from its activities for Ramirez Capital.

(Ex. A)

## McMahan's Unlawful Conduct

36.     Upon information and belief, in December 2020, while still employed by Ramirez Capital and working on behalf of Wilco Data, McMahan formed Guardian Compliance Advisors in the State of Iowa.

37.     On or about February 12, 2021, while still employed by Ramirez Capital and working on behalf of Wilco Data, McMahan formed Guardian Compliance Advisors, LLC in the State of Texas.

38.     McMahan is the registered agent of the Guardian Compliance Advisors Texas entity, and its mailing address and registered office address is McMahan's residence.

39.     On or about February 17, 2021, McMahan dissolved Guardian Compliance Advisors in Iowa.[1]

40.     On February 18, 2021, McMahan submitted his resignation, effective immediately to Wilco Data via email.

41.      According to its website, Guardian Compliance Advisors can be contacted at a P.O. Box in Argyle, Texas.  https://gca340b.com/contact/ (last visited March 25, 2021).

42.     According to its website, Guardian Compliance Advisors "partners with covered entities, independent and chain pharmacies to provide complete 340B program management." https://gca340b.com/about/ (last visited March 25, 2021).

---

[1] Because Plaintiffs believe that McMahan has dissolved the Iowa entity called Guardian Compliance Advisors and is solely operating the Texas entity of the same name, all references herein to "Guardian Compliance Advisors" is to the Texas entity unless otherwise noted.

43.     On February 22, 2021, Wilco Data received the company-issued laptop computer that McMahan used while working for Wilco Data.

44.     A search of McMahan's company laptop found that McMahan had copied the WD Master Spreadsheet and was tracking the revenue and profit margins for all of Wilco Data from all clients, including those that he did not work with.

45.     Ramirez Capital and Wilco Data did not authorize or otherwise consent to McMahan copying the WD Master Spreadsheet or tracking the revenue and profit margins for all of Wilco Data from all clients, including those that he did not work with, except for in connection with his Ramirez Capital employment and for the benefit of Ramirez Capital and Wilco Data.

46.     An examination of McMahan's company email further shows that, from December 2020 through February 2021, at times while he was still employed by Ramirez Capital and working for Wilco Data, McMahan had been soliciting the business of a prospective client for Wilco Data and that this prospective client agreed to "move forward with Wilco," beginning May 1, 2021. McMahan had a meeting scheduled with this client for February 16, 2021. A true and correct copy of those emails are attached hereto as Exhibit B.

47.     McMahan never informed Wilco Data about this prospective client and potential business opportunity, and the prospective client has not consummated its relationship with Wilco Data. Upon information and belief, McMahan usurped this business opportunity for the benefit of himself by and through his new company, Guardian Compliance Advisors, and to the detriment of Ramirez Capital and Wilco Data.

48.     After resigning his employment, McMahan continued soliciting Wilco Data customers for the purpose of managing their 340B programs through his new company, Guardian Compliance Advisors.

49.     On February 22, 2021, Wilco Data received an email from one of its clients intended for McMahan, indicating that, after he had resigned, McMahan had set up a meeting with that client for Wednesday, February 24, 2021.  A true and correct copy of that email is attached as Exhibit C.

50.     Another client has informed Wilco Data that, while McMahan was still employed by Wilco Data, he was soliciting their 340B program business to follow him to his new business and was attempting to "sabotage" Wilco Data's business.

51.     Additionally, two more clients have notified Wilco Data of its intent to cancel its contract and business relationship with Wilco Data.  Upon information and belief, McMahan is using or has used Wilco Data's Confidential Information to solicit this client for Guardian Compliance Advisors.

52.     On February 26, 2021 Ramirez Capital and Wilco Data, through counsel, sent McMahan a demand letter with a copy of the Confidentiality Agreement and demanded, among other things, that McMahan return all property and information McMahan took from Ramirez Capital and Wilco Data.  A true and accurate copy of that letter is attached hereto as Exhibit D.

53.     Later, on February 26, 2021, counsel for McMahan contacted the undersigned seeking an extension of the deadline to respond to the demand letter, and counsel had subsequent communications regarding the demand letter.

54.     On March 19, 2021, McMahan, through counsel, sent a letter and flash drive (which was delivered on March 22, 2021) to counsel for Ramirez Capital and Wilco Data purporting to contain "all information that [McMahan] had in his possession regarding Wilco that might contain data that your client claims is confidential." A true and accurate copy of that letter is attached hereto as <u>Exhibit E</u>. The letter confirms that McMahan possessed the Confidential Information and trade secrets of Wilco Data, while McMahan solicited Wilco Data's clients for McMahan's and Guardian Compliance Advisors' personal benefit and to the detriment of Ramirez Capital and Wilco Data. The letter offers assurances that McMahan "has not shared any information that may be considered confidential with any third party," but it notably does not offer any assurance that McMahan had not *used* any such information.

55.     Indeed, Wilco Data believes that McMahan has already used its Confidential Information to set up a competing business and to solicit multiple customers of Wilco Data.

56.     The types of information that McMahan took, without authorization or consent, includes formulas and processes that are not tied to a particular document and which McMahan could have used as the basis for creating similar formulas and processes for Guardian Compliance Advisors.

57.     Wilco Data is continuing to investigate the flash drive sent by McMahan and to conduct a forensic analysis of McMahan's company-issued laptop, but, given McMahan's activities to date, the continued solicitation of Wilco Data's customers, and the extremely sensitive nature of the information that McMahan took, Wilco Data is compelled to seek the Court's involvement to prevent further misuse of its trade secrets and Confidential Information and to seek remedies for McMahan's violations of his legal duties.

## COUNT I: BREACH OF CONTRACT

### (by Plaintiffs)

58.     Plaintiffs incorporate paragraphs 1 through 58 of this Verified Complaint as if fully set forth fully herein.

59.     The Confidentiality Agreement is a binding contract between McMahan and Ramirez Capital supported by adequate consideration.  Ramirez Capital honored and performed under the Agreement.

60.     Wilco Data is a third-party beneficiary of the Confidentiality Agreement, which protected Confidential Information disclosed to McMahan in the performance of his duties for Ramirez Capital as Director of Sales for Wilco Data.

61.     McMahan's obligations as set forth in the Confidentiality Agreement are supported by adequate consideration, including employment with Ramirez Capital.

62.      McMahan agreed in the Confidentiality Agreement that he recognized the critical importance of proper handling of Confidential Information and agreed not to use or disclose Confidential Information for his own benefit or for the benefit of anyone other than Ramirez Capital at any time during or after his employment with Ramirez Capital without Ramirez Capital's written consent.

63.     McMahan further agreed in the Confidentiality Agreement to return all Ramirez Capital property to Ramirez Capital upon the termination of his employment.

64.     McMahan breached the Confidentiality Agreement by taking, retaining, and not returning Ramirez Capital and Wilco Data's property when he left Ramirez Capital and Wilco Data.

65.     Upon information and belief, McMahan has further breached the Confidentiality Agreement by using Wilco Data's Confidential Information to solicit Wilco Data's clients and potential clients in order to operate Guardian Compliance Advisors in direct competition with Wilco Data.

66.     As a result of his breach, Ramirez Capital and Wilco Data have suffered and continue to suffer damages in an amount to be proven at trial.

**COUNT II: VIOLATION OF THE DEFEND TRADE SECRETS ACT, 18 U.S.C. § 1836 *et seq.***

(by Wilco Data)

67.     Plaintiffs incorporate paragraphs 1 through 58 of this Verified Complaint as if fully set forth fully herein.

68.     The WD Master Spreadsheet and information contained therein, which includes confidential customer lists, proprietary billing models, and extensive financial information about Wilco Data and its clients, constitute trade secrets under 18 U.S.C. § 1839.  The information contained therein derives considerable economic value from it not being generally known to, and readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure and use.

69.     Ramirez Capital and Wilco Data use reasonable efforts to maintain the secrecy of the WD Master Spreadsheet, including by limiting access to certain employees, using a system of unique login credentials to secure its electronically stored information, and requiring employees to sign non-disclosure agreements.

70.     McMahan copied the WD Master Spreadsheet without authorization or consent and through improper means for personal purposes and breach of his duty to maintain the secrecy of the information.

71.     McMahan's misappropriation of Wilco Data's trade secrets has caused, and will continue to cause, Wilco Data to suffer damages including but not limited to, the actual loss caused by the misappropriations, and the amount of unjust enrichment under 18 U.S.C. § 1836(b)(3)(B).

72.     McMahan's misappropriation of Wilco Data's trade secrets has caused, and will continue to cause, Wilco Data to suffer irreparable harm.

73.     Wilco Data is entitled to injunctive relief for McMahan's actual or threatened misappropriation of trade secrets pursuant to 18 U.S.C. § 1836(b)(3).

74.     Because McMahan's misappropriation of trade secrets was done willfully and maliciously, Wilco Data is entitled to exemplary damages under 18 U.S.C. § 1836(b)(3)(C).

## COUNT III: VIOLATION OF THE TEXAS UNIFORM TRADE SECRETS ACT TEX. CIV. PRAC. & REM. CODE § 134A.001 *et seq.*

(by Wilco Data)

75.     Plaintiffs incorporate paragraphs 1 through 58 of this Verified Complaint as if fully set forth fully herein.

76.     The WD Master Spreadsheet and information contained therein, which includes confidential customer lists, proprietary billing models, and extensive financial information about Wilco Data and its clients, constitute trade secrets under Tex. Civ. Prac. & Rem. Code § 134A.002. The information contained therein derives considerable economic value from it not

being generally known to, and readily ascertainable by proper means, by other persons who can obtain economic value from its disclosure and use.

77.    Ramirez Capital and Wilco Data use reasonable efforts to maintain the secrecy of the WD Master Spreadsheet, including by limiting access to certain employees, using a system of unique login credentials to secure its electronically stored information, and requiring employees to sign non-disclosure agreements.

78.    McMahan copied the WD Master Spreadsheet without authorization or consent and through improper means for personal purposes and breach of his duty to maintain the secrecy of the information.

79.    McMahan's misappropriation of Wilco Data's trade secrets has caused, and will continue to cause, Wilco Data to suffer damages including but not limited to, the actual loss caused by the misappropriations, and the amount of unjust enrichment under Tex. Civ. Prac. & Rem. Code § 134A.004(a).

80.    McMahan's misappropriation of Wilco Data's trade secrets has caused, and will continue to cause, Wilco Data to suffer irreparable harm.

81.    Wilco Data is entitled to injunctive relief for McMahan's actual or threatened misappropriation of trade secrets pursuant to Tex. Civ. Prac. & Rem. Code § 134A.003.

82.    Because McMahan's misappropriation of trade secrets was done willfully and maliciously, Wilco Data is entitled to exemplary damages under Tex. Civ. Prac. & Rem. Code § 134A.004(b) and to an award of reasonable attorneys' fees under Tex. Civ. Prac. & Rem. Code § 134A.005(3).

## COUNT IV: BREACH OF FIDUCIARY DUTY / DUTY OF LOYALTY

### (by Plaintiffs)

83. Plaintiffs incorporate paragraphs 1 through 58 of this Verified Complaint as if fully set forth fully herein.

84. As a Director of Sales for Wilco Data with access to Wilco Data's valuable trade secrets and confidential information, who solicited and interfaced with customers on behalf of Wilco Data, McMahan occupied a position of trust and owed Wilco Data a fiduciary duty and/or duty of loyalty, which required him, among other things, to devote his efforts to Wilco Data's best interests and to not engage in activities competitive with or that would otherwise injure Wilco Data.

85. While still employed as Director of Sales by Wilco Data, McMahan breached his fiduciary duty and/or duty of loyalty to Wilco Data by soliciting its clients and prospective clients for a competing business and/or usurping corporate opportunities for the benefit of himself and/or Guardian Compliance Advisors.

86. McMahan further breached his fiduciary duty and/or duty of loyalty to Wilco Data by taking information, including customers lists and the WD Master Spreadsheet.

87. McMahan's conduct has caused Wilco Data to suffer damages in an amount to be determined at trial. McMahan should also forfeit all compensation and benefits received by him, or that may be payable to him, during the period in which he was breaching his fiduciary duty and/or duty of loyalty. McMahan's breach of fiduciary duties and/or duty of loyalty were committed willfully, intentionally, with malice, fraud, wantonness, or oppression, and without justification or privilege, and Wilco Data is therefore entitled to an award of punitive damages.

**COUNT V: VIOLATION OF THE COMPUTER FRAUD AND ABUSE ACT, 18 U.S.C. § 1030**

(by Plaintiffs)

88.     Plaintiffs incorporate paragraphs 1 through 58 of this Verified Complaint as if fully set forth fully herein.

89.     McMahan knowingly accessed Ramirez Capital's computers without authorization or by exceeding his authorization by accessing Ramirez Capital's computer and cloud drive for his own, personal purposes unconnected to Ramirez Capital or Wilco Data's business without permission to do so, for the purpose of obtaining Wilco Data's Confidential Information for the benefit of himself in violation of 18 U.S.C. § 1030(a)(2)(C).

90.     The information taken by McMahan can be used to cause Ramirez Capital and Wilco Data a loss of more than $5,000 during a one-year period.

91.     Ramirez Capital and Wilco Data are entitled to an award of compensatory damages, as well as injunctive and other equitable relief, for McMahan's unlawful access of Ramirez Capital's computer systems and taking of confidential information.

**COUNT VI: VIOLATION OF THE HARMFUL ACCESS BY COMPUTER ACT, TEX. CIV. PRAC. & REM. CODE § 143.001 *et seq.***

(by Plaintiffs)

92.     Plaintiffs incorporate paragraphs 1 through 58 of this Verified Complaint as if fully set forth fully herein.

93.     McMahan knowingly accessed Ramirez Capital's computers and downloaded information without consent for his own, personal purposes unconnected to Ramirez Capital or Wilco Data's business and for the benefit of himself in violation of Tex. Penal Code § 33.02.

94.     Ramirez Capital and Wilco Data have been injured as a result of McMahan's violation of Tex. Penal Code § 33.02, which was committed knowingly and intentionally.

95.     Ramirez Capital and Wilco Data are entitled to an award of actual damages and reasonable attorneys' fees and costs pursuant to Tex. Civ. Prac. & Rem. Code § 143.002.

## COUNT VII: INJUNCTIVE RELIEF

96.     Plaintiffs incorporate paragraphs 1 through 58 of this Verified Complaint as if fully set forth fully herein.

97.     There is a substantial likelihood that Ramirez Capital and Wilco Data will prevail on the merits of their claims against McMahan.  McMahan has taken, retained, converted, and disclosed Wilco Data's property and Confidential Information and materially breached his Confidentiality Agreement with Ramirez Capital.  McMahan misappropriated Wilco Data's trade secrets, including customer lists.  McMahan also unlawfully accessed Ramirez Capital's computer systems by using Ramirez Capital's computer systems for his own personal purposes and by taking files from Ramirez Capital's cloud storage without permission.  Plaintiffs believe that McMahan continues to have and misappropriate Wilco Data's trade secrets and confidential information.

98.     If McMahan is allowed to continue with his unlawful conduct, Wilco Data's valuable relationships with its clients and prospective clients will be unlawfully interfered with and devalued, lost and/or destroyed and Wilco Data's Confidential Information will be devalued and/or further disseminated, causing Wilco Data to suffer immediate and irreparable harm. Plaintiffs have no adequate remedy at law to prevent this unlawful and unfair competition from continuing.

99. Wilco Data will suffer immediate and irreparable injury unless McMahan is enjoined from using or disclosing Wilco Data's Confidential Information, including to unlawfully compete against Wilco Data and to solicit is clients and prospective clients.

100. The balance of hardships favors the issuance of the requested injunctive relief. If injunctive relief is not provided, Plaintiffs will suffer irreparable harm, but if injunctive relief is provided McMahan will merely be forced to comply with established law and his obligations to Plaintiffs.

101. The requested injunctive relief would not be adverse to the public interest or policy of the State of Texas.

102. The Defend Trade Secrets Act and the Texas Uniform Trade Secrets Act specifically provide that actual or threatened trade secret misappropriation may be enjoined. 18 U.S.C. § 1836(b)(3); Tex. Civ. Prac. & Rem. Code § 134A.003.

103. The Computer Fraud and Abuse Act also specifically provides that a person who suffers loss from a violation of that law may obtain injunctive relief. 18 U.S.C. § 1030(g).

104. Plaintiffs therefore request temporary and permanent injunctive relief enjoining McMahan's further violation of their rights, in addition to such other relief as is necessary and just.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for relief as follows:

a. a preliminary and permanent injunction (1) enjoining McMahan from actual or threatened misappropriation, use, or disclosure of any confidential information or trade secrets belonging to Ramirez Capital and/or Wilco Data; (2) requiring McMahan to return any and all Ramirez

Capital / Wilco Data information and property unlawfully in his possession; and (3) enjoining McMahan from dealing with Wilco Data customers and prospective customers about whom he retained confidential information or trade secrets;

b.  a reasonable royalty for misappropriation or unauthorized use of Ramirez Capital / Wilco Data's trade secrets and confidential information;

c.  actual and compensatory damages in an amount to be determined at trial;

d.  punitive and exemplary damages in an amount to be determined at trial;

e.  all attorneys' fees and costs incurred in this lawsuit and as a result of McMahan's wrongdoing; and

f.  any other and further relief as this Court deems just and proper.

Respectfully submitted,

*/s/ David Allen Roberts*
David Allen Roberts
*(Pro Hac Vice Application forthcoming)*
Florida Bar No. 608444

HALL, GILLIGAN,
ROBERTS & SHANLEVER LLP
4987 E. Co. Hwy 30 A
Santa Rosa Beach, FL 32459
T: (850) 213-0604
F: (404) 537-5555
droberts@hgrslaw.com

Brian S. Abrams
*(Pro Hac Vice Application forthcoming)*
Georgia Bar No. 611649

3340 Peachtree Road, Suite 1900
Atlanta, GA 30326
T: (404) 442-8776
F: (404) 537-5555
babrams@hgrslaw.com

and

/s/ *Barry S. Hersh*
Barry S. Hersh
State Bar No. 24001114

*Board Certified in Labor and Employment Law*
*Texas Board of Legal Specialization*

HERSH LAW FIRM, PC
3626 N. Hall St., Suite 800
Dallas, TX 75219-5133
Tel  (214) 303-1022
Fax (214) 550-8170
barry@hersh-law.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

RAMIREZ CAPITAL, LLC and WILCO
DATA, LLC,

    Plaintiffs,

vs.

JARED MCMAHAN,

    Defendant.

Case No.

## **VERIFICATION**

  Personally appeared before me, the undersigned officer duly authorized to administer

oaths, the individual signatory below who, upon being duly sworn, depose, and state on oath that

the facts and information contained in the foregoing Verified Complaint for Injunctive Relief and

Damages are true and accurate to the best of his personal knowledge, information, and belief.



    David Rene Ramirez, President
    Ramirez Capital, LLC

Sworn to and subscribed before me
this 26 day of 03 , 2021.

Julien de la Hennerie
Notary Public
My Commission Expires

JULIEN DE LA HENNERIE
Notary Public, State of Texas
Comm. Expires 01-12-2025
Notary ID 132864202

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

RAMIREZ CAPITAL, LLC and WILCO
DATA, LLC,

                Plaintiffs,

vs.

JARED MCMAHAN,

                Defendant.

Case No.

## **VERIFICATION**

Personally appeared before me, the undersigned officer duly authorized to administer oaths, the individual signatory below who, upon being duly sworn, depose, and state on oath that the facts and information contained in the foregoing Verified Complaint for Injunctive Relief and Damages are true and accurate to the best of his personal knowledge, information, and belief.

                Dustin Hawk, President
                Wilco Data, LLC

Sworn to and subscribed before me
this 26 day of March, 2021.

Chris C Dance

Notary Public
My Commission Expires 08/28/2021

Notary Public State of Florida
Chris C Dance
My Commission GG 138489
Expires 08/28/2021