UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | |
|---|---|
| RAMIREZ CAPITAL SERVICES, LLC and WILCO DATA, LLC,<br><br>    Plaintiffs and Counter-Defendants,<br><br>vs.<br><br>JARED MCMAHAN,<br><br>    Defendant and Counter-Plaintiff. | Case No. 4:21-cv-00241-ALM |

## DEFENDANT JARED MCMAHAN'S RESPONSE TO PLAINTIFFS' PARTIAL MOTION TO DISMISS COUNTERCLAIMS UNDER RULE 12(b)(6) OR FOR MORE DEFINITE STATEMENT UNDER RULE 12(f) OR IN THE ALTERNATIVE MOTION FOR LEAVE TO AMEND

Defendant and Counter-Plaintiff, Jared McMahan, respectfully submits his Response to Plaintiffs' Partial Motion to Dismiss or for More Definite Statement (the "Motion") and in the alternative Motion for Leave to Amend.

## BACKGROUND

1. This case involves the constructive discharge of Jared McMahan from Wilco Data after Mr. McMahan blew the whistle internally to Wilco's management, informing them of Wilco's failure to timely remit monies due to its medical provider customers covered under the federal 340B discount drug pricing program. Upon leaving Wilco Data, Mr. McMahan took copies of certain financial and client data for the purpose of defending himself against any potential allegations of impropriety from customers. This information was only shared with Mr. McMahan's attorney in connection with his evaluation of whether Wilco Data was unlawfully holding monies

owed to the covered entities. Upon receiving a demand letter from counsel for Plaintiffs, Mr. McMahan through counsel tendered back to Wilco Data all company information with which he had departed. Mr. McMahan destroyed any remaining copies of any information.

2. On March 26, 2021, Ramirez Capital Services, LLC and Wilco Data, LLC filed their Verified Complaint for Injunctive Relief and Damages against Jared McMahan. On August 20, 2021, Mr. McMahan filed his Original Answer and Counterclaims. On September 10, 2021, Mr. McMahan filed his First Amended Answer and Counterclaims. On October 1, 2021, Plaintiffs filed their Partial Motion to Dismiss Counterclaims under Rule 12(b)(6) and for More Definite Statement Under Rule 12(f)[1]. Mr. McMahan's amended Counterclaims contain sufficient factual allegations to satisfy the requirements of Rule 12(b)(6) and 12(e).

## ARGUMENT

A. **Rule 12(b)(6) and Rule 12(e) Legal Standard**

3. While Federal Rule of Civil Procedure 12(b)(6) requires pleading facts above a "speculative level," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 1965 (2007), that state a claim for "relief that is plausible on its face," *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009) (quoting Twombly, 550 U.S. at 570), Federal Rule of Civil Procedure 8(a)(2) makes clear that these conditions are

---

[1] Defendant assumes that Plaintiffs' reference to the 12(f) legal standard is in fact a reference to the 12(e) legal standard. Rule 12(e) governs motions for more definite statement at issue in Plaintiffs' motion while rule 12(f) governs motions to strike.

met by "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R Civ. Proc. 8. Counter-Plaintiff has met that standard.

4. More specifically, in determining a motion to dismiss for failure to state a claim under 12(b)(6), a court is to accept "all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff[]." *Dao v. Upton,* No. 19-11130, 2021 U.S. App. LEXIS 29426, at *2 (5th Cir. 2021) (quoting *Dorsey v. Portfolio Equities, Inc,* 540 F.3d 333, 338 (5th Cir. 2008) (internal quotation marks and citation omitted)). "Because 12(b)(6) results in a determination on the merits at an early stage of plaintiff's case, the plaintiff is afforded the safeguard of having all its allegations taken as true and all inferences favorable to plaintiff will be drawn. The decision disposing (of) the case is then purely on the legal sufficiency of plaintiff's case: even were plaintiff to prove all its allegations, he or she would be unable to prevail." *Chatham Condo. Assos. v. Century Vill., Inc.*, 597 F.2d 1002, 1011 (5th Cir. 1979). Here, Counter-Plaintiff Mr. McMahan has pleaded sufficient, plausible facts that, if proven, will support a judgment in his favor.

5. Regarding Rule 12(e), "[a] party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response." Fed. R Civ. Proc. 12. Counter-Plaintiff Mr. McMahan's counterclaims are not vague or ambiguous.

B. **Mr. McMahan's Claims are not Against Unnamed Parties**

6. In Plaintiffs' Verified Complaint for Injunctive Relief and Damages, Counter-Defendants state that Ramirez Capital Services, LLC is the "the

employment management company" for Wilco Data, LLC. (Complaint ¶5). They reference in the Complaint Mr. McMahan's "employment for Ramirez Capital and Wilco." (Complaint ¶10). They also state that "McMahan was formerly employed by Ramirez Capital as Director of Sales for Wilco Data." (Complaint ¶6). The Complaint also says that "Ramirez Capital [not Wilco] also maintains an Employee Handbook." (Complaint ¶6) (text in brackets added). Given that these statements indicate that Mr. McMahan was employed by either or both of Ramirez Capital or Wilco Data, and given that the Complaint's silence about the specific relationship between Ramirez Capital and Wilco Data (Is one a subsidiary of the other? Are they joint employers of Mr. McMahan?), McMahan's First Amended Answer and Courterclaim, in an abundance of caution, pleaded a broad net to describe his employer:

> Both Counter-Defendants have been named in this amended answer and counterclaim in an abundance of caution given the practical impossibility, without the benefit of discovery, of determining which entity or entities, if not all of them, constitute the former employer or employers of Mr. McMahan.

(McMahan Counterclaim § 128).

Mr. McMahan judicially admits here (and will amend his answer and counterclaim and hereby moves to do so if the Court so finds it necessary) to plead his claims jointly and severally against Ramirez Capital Services, LLC and Wilco Data, LLC, only. In cases, as here, where "almost all of the evidence is in the possession of the defendant, and, therefore, it is likely impossible for plaintiff[] to state more specific allegations .

. . without first having the benefit of discovery," *Flagg v. Stryker Corp.*, 647 F. App'x 314, 319 (5th Cir. 2016) [2], leeway is allowed under the Rules.

### C. There was a Valid Contract

7. As Counter-Defendants' state in their motion, a valid contract under Texas law requires (1) an offer; (2) acceptance that strictly complies with the offer's terms; (3) a meeting of the minds; (4) the consent of each party to the terms; and (5) execution and delivery of the contract with the intent that it be mutual and binding. *Van Tiem v. First Am. Home Warranty Corp.*, No. 1:18-CV-458, 2020 U.S. Dist. LEXIS 198721, *9-10 (E.D. Tex. Aug. 5, 2020) (citing *Levetz v. Sutton*, 404 S.W.3d 798, 803 (Tex. App.—Dallas 2013, pet. denied)); *Sanders Oil & Gas GP, LLC v. Ridgeway Elec.*, 479 S.W.3d 293, 300 (Tex. App.—El Paso 2015, no pet.). A meeting of minds "is based on the objective standard of what the parties said and did, not on their subjective state of mind." *Van Tiem*, 2020 U.S. Dist. LEXIS at *10 (quoting *McCoy v. Alden Indus.*, 469 S.W.3d 716, 728 (Tex. App.—Fort Worth 2015, no pet.)). Mutual assent can be deduced from "the parties' acts and conduct from which one party can 'reasonably draw the inference of a promise.' " *Id.* (quoting *Buxani v. Nussbaum*, 940 S.W.2d 350, 352 (Tex. App.—San Antonio 1997, no writ)).

8. Counter-Defendants admit in their Complaint that an "employment relationship" (Complaint ¶ 1) — i.e., a contract — between Counter-Defendants and Mr. McMahan was forged from an offer letter that was accepted. (Complaint ¶¶ 26-

---

[2] *Flagg* involved reversal of the district court's dismissal of certain product liability claims under 12(b)(6) where defendant was in possession of the information necessary to more specifically plead.

27). Counter-Defendants state "McMahan signed the *offer* letter and *accepted* the position." (Complaint ¶ 27) (emphasis added).

9. The letter was from Ramirez Capital CFO Mark Heil — the offer. (Motion Ex. A (offer letter). It was signed by Mr. McMahan — the acceptance and execution. *Id.* Mr. McMahan was thereafter in an "employment relationship" (Complaint ¶ 1) – the meeting of the minds. The offer letter was delivered (Counter-Defendants attached it to their Motion) — the agreement was mutual and binding. *Id.* There is no doubt — there was a binding contract on the terms stated in the letter.

10. Notwithstanding the clause "this offer letter is not an employment contract," Counter-Defendants' actions in presenting the letter and statements in the letter led Mr. McMahan to draw a reasonable inference of a promise to be paid the rates stated in the letter. *See* (McMahan Counterclaim ¶¶ 133-34). The letter made clear the payment terms that would govern his employment relationship. *See* (McMahan Counterclaim ¶ 134). It can be deduced from the objective terms of the letter and Mr. McMahan's performance thereunder that an employment contract on those terms arose. *See* (McMahan Counterclaim ¶¶ 133-34).

11. Further, Counter-Defendants' were paying Mr. McMahan based on the terms provided in the letter, both for his salary rate and the commission arrangement. *See* (McMahan Counterclaim ¶¶ 135-36 ("Counter-Defendants failed to pay all commissions earned . . ." (i.e., all other salary and commissions earned had been paid)). These actions by the parties support that the terms in the letter were mutually agreed upon.

12. Further Counter-Defendants do not claim in their Complaint or Motion to have modified the salary or commission rates. (Complaint (see absence of any contention of modification of pay); Motion at 5-6 (same)). In *Hamilton v. Segue Software, Inc.*, the Fifth Circuit found that an offer letter setting out an annual salary rate does not guarantee employment, but it does "provide a benchmark to evaluate one's pay." *Hamilton v. Segue Software, Inc.,* 232 F.3d 473, 480 (5th Cir. 2000).

13. Counter-Defendants misstate the language of the offer letter when they state "Ramirez Capital is not obligated to provide McMahan any particular position, compensation, benefits, or other terms of employment." (Motion at 5). Instead, the offer letter provides that "Ramirez Capital is an 'at will' employer, and as such the terms of employment may be changed with or without cause." (Motion Ex. A (offer letter)). In fact, the letter expressly offers Mr. McMahan the position of Director of Sales for Wilco Data and specifies his starting base monthly salary, commission rate, and other work related benefits and terms. *Id.; see also* (McMahan Counterclaim ¶¶ 133-34). The letter further states that Mr. McMahan is accepting the "terms, conditions, and positions of the above stated employment offer." (Motion Ex. A (offer letter)). While the letter says it is not an employment contract, it still establishes the employment relationship and sets the terms of that relationship. Counter-Defendants did not change the terms of employment prior to Mr. McMahan earning the unpaid commission sought in McMahan's Counterclaim.

14. Counter-Defendants cite *Stinger* in support of their argument that there was no binding contract in this case; however, in *Stinger*, the commission

arrangements "made no provision regarding salary and made commission completely discretionary to the company." *Stinger v. Stewart & Stevenson Servs., Inc.*, 830 S.W.2d 715, 719-20 (Tex. App.-Houston [14th Dist.] 1992, writ denied). Here, there is not a range of possible commissions, but instead a set monthly salary and percentage commission on new business that Mr. McMahan generated. (Motion Ex. A (offer letter)). While Counter-Defendants could have changed the payment arrangement, they did not, and, consequently, the commissions were no longer discretionary once earned.

15. Even if an employment relationship is terminable at-will and the employment terms can be changed, it "does not mean that an employer can promise to pay an employee a certain wage and then unilaterally decide to pay the employee less for work (he) has already done." *Van Tiem*, 2020 U.S. Dist. LEXIS at *13, (quoting *Jourdan v. Schenker Int'l Inc.*, 71 F. App'x 308, 311 (5th Cir. 2003)) (quoting *Paniagua v. City of Galveston*, 995 F.2d 1310, 1313 (5th Cir. 2003)). "The law favors finding agreements sufficiently definite for enforcement, particularly [where one party has] already sufficiently provided the services for which the compensation was to be paid." *Id.* (quoting *Malone v. Ariba, Inc.*, 99 F. App'x 545, 551 (5th Cir. 2004)).

16. Mr. McMahan does not argue that this offer letter modified the at-will relationship or Counter-Defendants' right to modify the terms of the employment arrangement. Instead, Mr. McMahan argues that he is entitled to his salary rate and commission for the work he has already performed. Counter-Defendants cannot

decide after the work has been performed that they would prefer to pay Mr. McMahan less, or not at all. If Counter-Defendants desired a different arrangement, they should have changed his commission before the work was performed.

17. Accordingly, Mr. McMahan is entitled to payments based on the terms of the offer letter, which was the basis of a valid agreement, or in the alternative, was adopted by Counter-Defendants' actions when they paid Mr. McMahan based on the same. Mr. McMahan has pleaded sufficient, plausible facts that, if proven, will support a judgment in his favor, and therefore his counterclaim for breach of contract cannot be dismissed.

18. Moreover, employment at will or the ability to modify a contractual promise does not negate existence of an employment contract. Counter-Defendants do not allege in their Complaint or Motion that Mr. McMahan failed to perform. Mr. McMahan performed and Counter-Defendants accepted that performance and Counter-Defendants cannot now refuse to pay — there is a contract by performance even if no contract under the letter arose (which it did). As stated by the Texas Supreme Court in *Vanegas v. American Energy Services*:

> The fact that the employees were at-will and were already being compensated in the form of their salaries in exchange for remaining employed also does not make the promise to pay the bonus any less enforceable.
>> It is now recognized that these are not pure gratuities but compensation for services rendered. The employer's promise is not enforceable when made, but the employee can accept the offer by continuing to serve as requested, even though the employee makes no promise. There is no mutuality [**13] of obligation, but there is consideration in the form of service rendered. The employee's one

> consideration, rendition of services, supports all of the employer's promises, to pay the salary and to pay the bonus.
>
> 2 CORBIN ON CONTRACTS § 6.2; *see also* Elizabeth T. Tsai, Annotation, *Promise By Employer to Pay Bonus as Creating Valid and Enforceable Contract*, 43 A.L.R.3d 503 (1972) (listing cases from several states upholding validity of employers' promises to pay bonuses in exchange for employees' future service).

*Vanegas v. Am. Energy Servs.*, 302 S.W.3d 299, 304 (Tex. 2009).

19. Finally, because Counter-Defendants argue no contract and no meeting of the minds and they deny the terms of their employment offer letter, Mr. McMahan is left to assume that their intentions were nefarious from the beginning (they did not intend to pay him as promised).

20. Should the Court find Mr. McMahan has failed to plead a plausible claim for breach of contract, Mr. McMahan hereby moves the Court to allow him fourteen (14) days from the date of any order so finding to amend his counterclaim to assert causes of action for promissory estoppel (they shouldn't be allowed to promise to Mr. McMahan's detriment and not pay), fraud (if they never intended to pay or intended to reserve the right to refuse to pay after performance, that is fraudulent), fraudulent inducement (they gave him an offer letter to induce him to come work for them, but then intended to deny his full commissions), quantum meruit (his work performed had value apart from any contract and they should be required to pay it), and unjust enrichment (to allow them to keep the benefits of Mr. McMahan's performance would amount to unjust enrichment).

D. **DTSA Expressly Contemplates a Cause of Action for Retaliation**

21. The plain language of the Defend Trade Secrets Act," 18 U.S.C. § 1833, 1836, *et seq.* ("DTSA") explicitly acknowledges a cause of action for whistleblower retaliation and, at a minimum, implicitly creates a private cause of action. "When evaluating laws in an effort to locate implied causes of action, federal courts are tasked with 'interpret[ing] the statute Congress has passed to determine whether it displays an intent to create not just a private right but also a private remedy.'" *Tex. Voters All. v. Dall. Cty.*, 495 F. Supp. 3d 441, 460 (E.D. Tex. 2020) (citing *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001), which was citing *Transamerica Mortg. Advisors, Inc. v. Lewis*, 444 U.S. 11, 15 (1979)). As shown below, Congress intended to create a private right (prohibiting retaliation) and a private remedy (a lawsuit).

22. The DTSA at 18 U.S.C. § 1833(b)(2) provides that "[a]n individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual-- (A) files any document containing the trade secret under seal." 18 U.S.C. § 1833(b)(2). Accordingly, the DTSA recognizes a lawsuit for retaliation brought by a whistleblower, like Mr. McMahan, and provides the procedural mechanism under which trade secret information may be used in said lawsuit.

23. Counter-Defendants' citation to authority for a private right of action for misappropriation under the DTSA does not foreclose the validity of a claim for retaliation, which is expressly acknowledged by the DTSA. *See* (Motion at 6-7).

Counter-Defendants also appropriately cite to the DTSA's immunity provision, 18 U.S.C. § 1833(b)(1). Under that provision, "[a]n individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that— (A) is made— (i) in confidence to a Federal, State, or local government official, either directly or indirectly, or to an attorney." While Mr. McMahan denies having disclosed any trade secret information at all, if the Court determines he did, it was disclosed to his attorney in the context described in § 1833(b)(1).

24. The DTSA immunity provision (§ 1833(b)(1)) coupled with the cause of action assumed in the DTSA allowable disclosures provision (§ 1833(b)(2)) makes clear the importance of recognition of a whistleblower's right to sue. As Professor Peter S. Menell[3], who assisted with the drafting of the DTSA, states: "The meaning and scope of this provision are of vital importance to enforcing health, safety, civil rights, financial market, consumer, and environmental protections and deterring fraud against the government, shareholders, and the public." Peter S. Menell, *Symposium: Implementing and Interpreting the Defend Trade Secrets Act of 2016: Symposium Article: The Defend Trade Secrets Act Whistleblower Immunity Provision: A Legislative History*, 1 Bus., Entrepreneurship & Tax L. Rev. 398, 400 (2017).

---

[3] Mr. Menell is the Koret Professor of Law and Co-Director, Berkeley Center for Law & Technology, University of California at Berkeley School of Law. He states in the footnotes to his referenced article, "I am especially grateful to the Senate Judiciary Committee staff for reaching out to me in drafting the Defend Trade Secrets Act of 2016." Peter S. Menell, *Symposium: Implementing and Interpreting the Defend Trade Secrets Act of 2016: Symposium Article: The Defend Trade Secrets Act Whistleblower Immunity Provision: A Legislative History*, 1 Bus., Entrepreneurship & Tax L. Rev. 398, 400 (2017).

25. Counter-Defendants argue that the immunity provision is an affirmative defense, which is true, but it is more than that. As Mr. Menell further states: "Most importantly, the whistleblower immunity provision is structured as an *immunity* and not a defense. By characterizing the safe harbor as an immunity, Congress shifted the law and legal process from the employer's advantage to the employee and the public's advantage. The immunity is based on the concern that corporations can "bully" and deter potential whistleblowers through the threat of costly trade secret litigation. Hence, courts should allocate the burden of proof on the trade secret owner seeking to impose liability on a potential whistleblower and resolve the applicability of the immunity provision expeditiously." Menell, 1 Bus., Entrepreneurship & Tax L. Rev. at 425.

26. Even should the Court find no implied private right of action under the DTSA, Rule 11 of the Federal Rules of Civil Procedure allow room in a lawsuit for claims that "are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law." Fed. R. Civ. Proc. 11. So whether by implied right or good faith extension of existing law, Mr. McMahan has stated a claim for whistleblower retaliation for which relief can be granted and dismissal under Rule 12(b)(6) is inappropriate.

E. **Mr. McMahan has a Viable Claim for Constructive Discharge**

27. Counter-Defendants attack Mr. McMahan's use of the term "trust fund

doctrine."[4] Mr. McMahan's allegations make clear the trust fund violations alleged[5] and describe those actions as a violation of the trust fund doctrine. More particularly Mr. McMahan's claims come within the doctrine of constructive trust under Texas law.

28. As stated by the Texas Supreme Court in *KCM Financial, LLC v. Bradshaw*:

> A constructive trust is an equitable, court-created remedy designed to prevent unjust enrichment. *Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex. 1974) ("Constructive trusts, being remedial in character, have the very broad function of redressing wrong or unjust enrichment in keeping with basic principles of equity and justice."). They have historically been applied to remedy or ameliorate harm arising from a wide variety of misfeasance. Pomeroy's Equity Jurisprudence, 5th Ed., Vol. 4, p. 97, § 1045, *quoted in Pope v. Garrett*, 147 Tex. 18, 211 S.W.2d 559, 560 (Tex. 1948) ("It has been said that 'The specific instances in which equity impresses a constructive trust are numberless—as numberless as the modes by which property may be obtained through bad faith and unconscientious acts.'"). But the reach of a [**42] constructive trust is not unlimited. Three elements are generally required for a constructive trust to be imposed under Texas law. The party requesting a constructive trust must establish the following: (1) breach of a special trust or fiduciary relationship or actual or constructive fraud; (2) unjust enrichment of the wrongdoer; and (3) an identifiable res that can be traced back to the original property. *Matter of Haber Oil Co., Inc.*, 12 F.3d 426, 437 (5th Cir. 1994) (applying Texas law); *see also Meadows*, 516 S.W.2d at 128-31.

*KCM Fin. LLC v. Bradshaw*, 457 S.W.3d 70, 87 (Tex. 2015).

---

[4] Each of the varieties of trust fund discussed in the Motion are similar to the trust fund violation here: funds intended for the benefit of others (medical providers qualified under the 340B program) being mismanaged by a person or entity (Counter-Defendants) charged with managing those funds for the benefit of the trust beneficiary (said medical providers).

[5] "Counter-Defendants were engaged in activities where client funds were being mismanaged and, at least temporarily, misappropriated." (McMahan Counterclaim ¶ 141).

29. McMahan has pleaded sufficient, plausible facts of violation of the doctrine of constructive trust: breach of special trust or fiduciary relationship or fraud (McMahan Counterclaim ¶¶ i-iv) [between Counter-Defendants, as 340B program managers, and medical providers qualified under the 340B program ("covered entities")]; unjust enrichment (McMahan Counterclaim ¶¶ v, 141-42) [funds due to the covered entities were not being remitted to the covered entity for 60, 90, 120 days or longer after Wilco received such funds]; and an identifiable res (McMahan Counterclaim ¶ ii, iv-v, 141-142) [the full, non-discounted price of discounted drug prescriptions after deduction of a dispensing fee due to the covered entity].

30. Should the Court find Mr. McMahan has failed to plead a plausible claim for constructive discharge, Mr. McMahan hereby moves the Court to allow him fourteen (14) days from the date of any order so finding to amend his Counterclaim to more specifically assert his cause of action for constructive discharge due to violation of the doctrine of constructive trust.

## CONCLUSION

Based on the foregoing reasons, Defendant/Counter-Plaintiff Jared McMahan respectfully requests that the Court to deny Plaintiffs/Counter-Defendants' motion to dismiss and for more definite statement in its entirety. In the alternative, Defendant/Counter-Plaintiff requests the Court to allow Defendant/Counter-Plaintiff 14 days to replead his Counterclaim to cure any deficiencies.

Respectfully submitted the 22nd day of October, 2021.

        BURDETT MORGAN WILLIAMSON & BOYKIN, LLP
        701 S. Taylor, Suite 324
        Amarillo, TX  79101
        (806) 358-8116 Telephone
        (806) 350-7642 Fax


By: _____
    C. Jared Knight, State Bar No. 00794107
    jknight@bmwb-law.com

*Attorney for Jared McMahan*

## **CERTIFICATE OF SERVICE**

The undersigned certifies that on the 22nd day of October, 2021, a true and correct copy of this document was served upon all counsel of record via the Court's CM/ECF system and by email.

HALL, GILLIGAN, ROBERTS,
& SHANLEVER, LLP
David Allen Roberts
Florida Bar No. 608444
droberts@hgrslaw.com
4987 E. Co. Hwy 30 A
Santa Rosa Beach, FL 32459
T: (850) 213-0604
F: (404) 537-5555

Brian S. Abrams
Georgia Bar No. 611649
babrams@hgrslaw.com
3340 Peachtree Road, Suite 1900
Atlanta, GA 30326
T: (404) 442-8776
F: (404) 537-5555

HERSH LAW FIRM, PC
Barry S. Hersh
State Bar No. 24001114
3626 N. Hall St., Suite 800
Dallas, TX 75219-5133
Tel. (214) 303-1022
Fax (214) 550-8170
barry@hersh-law.com
*Attorneys for Defendant*

_____
C. Jared Knight