# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

RAMIREZ CAPITAL SERVICES, LLC and
WILCO DATA, LLC,

    *Plaintiffs*,

vs.

JARED MCMAHAN,

    *Defendant*.

Case No. 4:21-cv-00241-ALM

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs Ramirez Capital Services LLC and Wilco Data, LLC's Par[t]ial Motion to Dismiss Counterclaims under Rule 12(b)(6) or for More Definite Statement under Rule 12(f) (Dkt. #14). Having considered the motion and relevant pleadings, the Court finds it should be **GRANTED in part and DENIED in part.**

### BACKGROUND

This action arises in the context of a former employment relationship between Plaintiffs Ramirez Capital Services, LLC ("Ramirez Capital") and Wilco Data, LLC ("Wilco Data") on one hand and Defendant Jared McMahan ("McMahan") on the other.

Wilco Data provides "implementation and management" of 340B Drug Pricing Program, a federal program that requires drug manufacturers to provide outpatient drugs to eligible health care organizations at reduced prices (Dkt. #1 ¶¶ 11–12). Ramirez Capital is the employment management company for Wilco Data (Dkt. #1 ¶ 5).

In 2018, McMahan accepted a position as Director of Sales for Wilco Data (Dkt. #1 ¶¶ 26–27). McMahan resigned February 18, 2021 (Dkt. #1 ¶ 40). After his resignation, McMahan solicited Wilco Data customers for management of their 340B programs (Dkt. #1 ¶ 48).

On March 26, 2021, Wilco Data and Ramirez Capital sued McMahan, alleging McMahan misappropriated trade secrets, breached his fiduciary duties, and breached contractual obligations to Wilco Data and Ramirez Capital (Dkt. #1). McMahan answered on August 20, 2021 (Dkt. #11). On September 10, 2021, McMahan filed his First Amended Answer and Counterclaims, alleging breach of contract, defamation, and constructive discharge (Dkt. #12).

Wilco Data and Ramirez Capital moved to dismiss on October 1, 2021 (Dkt. #14). McMahan responded on October 22, 2021 (Dkt. #21).

## LEGAL STANDARD

*Federal Rule 12(b)(6)*

The Federal Rules of Civil Procedure require that each claim in a complaint include a "short and plain statement . . . showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Each claim must include enough factual allegations "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

A Rule 12(b)(6) motion allows a party to move for dismissal of an action when the complaint fails to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts in the plaintiff's complaint and view those facts in the light most favorable to the plaintiff. *Bowlby v. City of Aberdeen*, 681 F.3d 215, 219 (5th Cir. 2012). The Court may consider "the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010). The Court must then determine whether the complaint states a claim for relief that is plausible on its face. "A claim has facial plausibility when the plaintiff pleads factual content that allows the [C]ourt to draw the reasonable inference that the defendant is

liable for the misconduct alleged." *Gonzalez v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "But where the well-pleaded facts do not permit the [C]ourt to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)).

In *Iqbal*, the Supreme Court established a two-step approach for assessing the sufficiency of a complaint in the context of a Rule 12(b)(6) motion. First, the Court should identify and disregard conclusory allegations, for they are "not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 664. Second, the Court "consider[s] the factual allegations in [the complaint] to determine if they plausibly suggest an entitlement to relief." *Id.* "This standard 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary claims or elements.'" *Morgan v. Hubert*, 335 F. App'x 466, 470 (5th Cir. 2009) (citation omitted). This evaluation will "be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570).

***Federal Rule 12(e) Motion for More Definite Statement[1]***

Rule 12(e) of the Federal Rules of Civil Procedure allows a party to move for a more definite statement of the pleadings when the pleadings are "so vague or ambiguous that the party cannot reasonably prepare a response." FED. R. CIV. P. 12(e). "If a pleading fails to specify the allegations

---

[1] Wilco Data and Ramirez Capital move for more definite statement under Rule 12(f), which provides "the court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." FED. R. CIV. P. 12(f). Wilco Data and Ramirez Capital have not requested the Court strike any of McMahan's pleadings (Dkt. #14). Further, Wilco Data and Ramirez Capital go on to provide language from Rule 12(e). The Court assumes Plaintiffs seek more definite statement, rather than to strike portions of McMahan's pleadings.

3

in a manner that provides sufficient notice, a defendant can move for a more definite statement . . . before responding." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002). Motions for a more definite statement are generally disfavored because "in view of the great liberality of Federal Rule of Civil Procedure 8 . . . it is clearly the policy of the Rules that Rule 12(e) should not be used to . . . require a plaintiff to amend his complaint which under Rule 8 is sufficient to withstand a motion to dismiss." *Source Data Acquisition, LP v. Talbot Grp., Inc.*, 4:07-cv-294, 2008 WL 678645, at *2 (E.D. Tex. Mar. 11, 2008) (citing *Mitchell v. E-Z Way Towers, Inc.*, 269 F.2d 126, 132 (5th Cir. 1959)).

## ANALYSIS

Wilco Data and Ramirez Capital seek dismissal of: (1) unnamed parties; (2) McMahan's breach of contract claim; (3) McMahan's claim for retaliation pursuant to the Defend Trade Secrets Act (the "DTSA"); and (4) McMahan's constructive discharge claim (Dkt. #14). McMahan contends his pleadings are sufficient, or in the alternative, requests the Court grant him leave to amend (Dkt. #21).

### A. Unnamed "Counter-Defendants"

In McMahan's answer, McMahan pleaded that, along with Wilco Data and Ramirez Capital, Counter-Defendants also refers to:

> Mr. McMahan's former employer, regardless of the form or number of persons and/or entities comprising the same, and includes all of the respective predecessors, successors, assigns, heirs, executors, administrators, agents, employees, insurers, and legal representatives of each and all of them that may be considered the former employer of Mr. McMahan, during the time that Mr. McMahan worked there.

(Dkt. #12 ¶ 128). Wilco Data and Ramirez Capital assert that McMahan cannot proceed against any unidentified counter-defendants since none have been served with summons, McMahan has not provided grounds for jurisdiction, and "no one besides Ramirez Capital and Wilco Data are identified

4

on the title of the pleadings" (Dkt. #14 at p. 3). McMahan responds that he pleaded this way out of an abundance of caution, because the nature of the relationship between Wilco Data and Ramirez Capital was unclear (Dkt. #21 ¶ 6). McMahan admits his claims are against Ramirez Capital and Wilco Data, jointly and severally (Dkt. #21 ¶ 6). The Court permits McMahan to replead accordingly, thereby dropping any claims against unnamed or unidentified counter-defendants.

### B. Breach of Contract

McMahan brought a counterclaim for breach of contract, alleging "Counter-Defendants and Counter-Plaintiff entered into a valid contract via an 'Offer of Employment'" letter (the "Letter") (Dkt. #12 ¶ 135). Wilco Data and Ramirez Capital assert that no contract was formed, thus McMahan's breach of contract claim fails as a matter of law (Dkt. #14 at p. 6). McMahan counters that an employment relationship existed, which arose from McMahan's acceptance of the Letter, and thus a binding contract existed (Dkt. #21 ¶¶ 8–9).

To prevail on his breach of contract claim, McMahan must demonstrate: (1) a valid contract exists; (2) the plaintiff performed or tendered performance as contractually required; (3) the defendant breached the contract by failing to perform or tender performance as contractually required; and (4) the plaintiff sustained damages due to the breach. *Pathfinder Oil & Gas, Inc. v. Great W. Drilling, Ltd.*, 574 S.W.3d 882, 890 (Tex. 2019). Texas is an employment-at-will state. *Thomas v. Long*, 207 S.W.3d 334, 341 (Tex. 2006). So, "absent a specific agreement to the contrary, employment may be terminated by the employer or the employee at will, for good cause, bad cause, or no cause at all." *Montgomery Cnty. Hosp. Dist. v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998). For an employment agreement to exist, "the employer must unequivocally indicate a definite intent to be bound not to terminate the employee except under clearly specified circumstances." *Id.* The employee has the burden of proving the at-will relationship was modified. *Dworschak v. Transocean*

*Offshore Deepwater Drilling, Inc.*, 352 S.W.3d 191, 196 (Tex. App.—Houston [14th Dist.] 2011, no pet.).

> McMahan referenced a portion of the Letter in his Answer:
>
> In addition to your base salary, you can earn a 10% commission rate on "adjusted gross profits" from the new business that you generate. During your first six months of employment, Ramirez Capital will provide a guaranteed draw on your commissions of $3,000 per month paid quarterly to you during your first six months of employment as you acquire new business for Wilco Data. Commissions generated during the 1st six months of employment that exceed the guarantee, will be paid at each quarter end. The full 10% commission rate will be paid on active accounts for 3 years and starting year four, the commission rate on active accounts will be reduced to 3% per year.

(Dkt. #12 ¶ 134). The Letter details other benefits, like health insurance and vacation time (Dkt. #14, Exhibit A).[2] The Letter contains no language on the duration of the employment (Dkt. #14, Exhibit A). Absent language on the length of the prospective employment, the Letter does not constitute an employment agreement. *Midland Judicial Dist. Cmty. Supervision & Corr. Dep't v. Jones*, 92 S.W.3d 486, 487–88 (Tex. 2002) (holding offer letter that contained statements of annual salary and general statement that salary is based on future performance did not create employment contract); *Rios v. Tex. Commerce Bancshares, Inc.*, 930 S.W.2d 809, 815 (Tex. App.—Corpus Christi 1996, writ denied) (holding letter offering employment was not contract because it merely stated salary and other benefits but did not set term of employment); *Dech v. Daniel, Mann, Johnson & Mendenhall,* 748 S.W.2d 501, 502–03 (Tex. App.—Houston [1st Dist.] 1988, no writ) (affirming no contract was formed where employment offer letter detailed terms of employment but did not specify length of employment). Thus, as a matter of law, a contract was not formed through the Letter.

Furthermore, the Letter states, "this offer letter is not an employment contract" and that "Ramirez is an 'at will' employer, and as such terms of employment may be changed with or without

---

[2] The Letter is attached as an exhibit to the motion to dismiss (Dkt. #14, Exhibit A), McMahan referenced portions of the Letter in his pleadings, and McMahan's breach of contract claim rests on the Letter and its contents (Dkt. #12). Thus, the Court finds it appropriate to consider the Letter in its entirety. *Lone Star Fund*, 594 F.3d at 387 (stating courts may consider documents attached to the motion to dismiss that are central to the claim and referenced by the complaint").

6

cause" (Dkt. #14, Exhibit A). McMahan signed the letter, acknowledging that he read and understood it (Dkt. #14, Exhibit A). Acknowledgment of such a disclaimer does not support McMahan's contentions regarding the existence of an employment contract. *Williams v. First Tenn. Nat'l Corp.*, 97 S.W.3d 798, 803 (Tex. App.—Dallas, 2003, no pet.) (finding a disclaimer in employee handbook stating the handbook did not constitute a contract "negates any implication that a personnel procedures manual places a restriction on the employment-at-will relationship."); *Stinger v. Stewart & Stevenson Servs., Inc.*, 830 S.W.2d 715, 719–20 (Tex. App.—Houston [14th Dist.] 1992, writ denied) (holding a commission arrangement set out in an employee handbook that made commission completely discretionary to the company and disclaims any contractual relationship was merely an incentive arrangement).

McMahan has not pleaded facts which would establish a valid contract regarding his compensation existed, therefore neither Wilco Data nor Ramirez Capital can be in breach. *Pathfinder*, 574 S.W.3d at 890. "The fact that the company decided to act on its discretionary power to [McMahan's] detriment does not make it a breach of contract." *Stinger*, 830 S.W.2d at 720. The Court finds McMahan's breach of contract claim fails as a matter of law. However, McMahan moves the Court to allow time to replead so he may assert counterclaims for promissory estoppel, fraud, fraudulent inducement, quantum meruit, and unjust enrichment (Dkt. #21 ¶ 20). The Court finds no reason to deny McMahan's request and will permit him to file a Second Amended Answer and Counterclaims.

### C. Retaliation

In McMahan's answer, he pleaded: "Counter-Defendants' refusal to cease this unlawful conduct after Counter-Plaintiff blew the whistle, and refusal to pay his earned commissions, amounted to whistleblower retaliation under the Defend Trade Secrets Act" (Dkt. #12 ¶ 142). Wilco

Data and Ramirez Capital contend that no private cause of action for whistleblower retaliation exists under the DTSA (Dkt. #14 at p. 7). McMahan contends the DTSA explicitly recognizes cause of action for whistleblower retaliation, and at a minimum, implicitly creates a private cause of action (Dkt. #21 ¶ 21).

The DTSA provides a federal private cause of action for trade secret misappropriation. 18 U.S.C. § 1833(b)(1). Wilco Data and Ramirez Capital alleged McMahan misappropriated trade secrets (Dkt. #1 ¶¶ 67–74), thus their claims are authorized under the DTSA. *Id.*

The DTSA includes provisions that protect the confidentiality of trade secrets in a DTSA proceeding, for example, the DTSA immunizes individuals from liability under federal and state law for certain confidential disclosures of trade secret information. 18 U.S.C. § 1833(b). Three types of disclosure are protected, but relevant here is: "a disclosure to an attorney or in a court proceeding by an individual who files a lawsuit for retaliation by an employer for the individual's reporting of a suspected violation of law as long as any court filings are made under seal and the individual does not otherwise disclose a trade secret except pursuant to a court order." 18 U.S.C. § 1833(b)(2). Such immunity is an affirmative defense, and entitlement to the immunity must be established by the defendant. 7 PATENT LAW PERSPECTIVES § 16.2 DEFEND TRADE SECRETS ACT (collecting cases). McMahan misconstrues this language as recognizing a lawsuit for retaliation by a whistleblower (Dkt. #21 ¶ 22). However, the Court has found nothing in the language of the DTSA or the caselaw to suggest the DTSA creates a private cause of action for retaliation.

Thus, McMahan's assertions regarding retaliation are better plead as an affirmative defense rather than as a counterclaim. The Court will allow McMahan to replead accordingly. Further, due to McMahan's burden, he is advised to assert facts which would show his entitlement to immunity under the DTSA.

D.  **Constructive Discharge**

McMahan brought a claim for constructive discharge (Dkt. #12 ¶¶ 141–44), in which he alleged:

> Counter-Defendants were engaged in activities where client funds were being mismanaged and, at least temporarily, misappropriated. Counter-Plaintiff reported these trust fund doctrine violations to Counter-Defendants who would not resolve the concern. Counter-Defendants continued in their unreasonable delay in tendering 340B discount funds to their qualified medical provider customers.

(Dkt. #12 ¶ 141).  McMahan further pleaded that "[d]ue to Counter-Defendants' conduct, the working environment was so intolerable that Counter-Plaintiff felt reasonably compelled to resign . . . Counter-Defendants conduct caused the retaliatory constructive discharge of the employment of Counter-Plaintiff" (Dkt. #12 ¶ 143).  Ramirez Capital and Wilco Data assert Texas has several "trust fund doctrines," and McMahan failed to provide fair notice of which one McMahan alleges (Dkt. #14 p. 8).  Ramirez Capital and Wilco Data further allege that none of the trust fund doctrines are applicable here, and none can form the basis for a cause of action under the DTSA (Dkt. #14 p. 8).  McMahan contends his pleadings "make clear the trust fund violations alleged and describe those actions as a violation of the trust fund doctrine" (Dkt. #21 ¶ 27).  McMahan contends his claims come within the doctrine of constructive trust under Texas law (Dkt. #21 ¶ 27).

First, a constructive trust is an equitable, court-created remedy designed to prevent unjust enrichment.  *Meadows v. Bierschwale*, 516 S.W.2d 125, 131 (Tex. 1974).  Generally, the party requesting a constructive trust must establish the following: (1) breach of a special trust or fiduciary relationship or actual or constructive fraud; (2) unjust enrichment of the wrongdoer; and (3) an identifiable res that can be traced back to the original property.  *Matter of Haber Oil Co., Inc.*, 12 F.3d 426, 437 (5th Cir. 1994).  McMahan has failed to request this remedy, possibly misconstruing this concept as a cause of action, and also fails to allege any of the elements he must prove to succeed

in a request for constructive trust.

Second, the trust fund doctrine is a mechanism, in Texas law, to recognize a creditor's right to sue derivatively. *Aurelius Capital Master, Ltd. v. Acosta*, 2014 U.S. Dist. LEXIS 151201, *11 (N.D. Tex. Jan. 28, 2014). The trust fund doctrine appears to exist only in the context of an insolvent corporation that ceases conducting business. *Prostok v. Browning*, 112 S.W.3d 876, 908 n.41 (Tex.App.—Dallas 2003) (doubting that the trust fund doctrine "exists outside of the dissolution of a corporation"), *aff'd in part, rev'd in part*, 165 S.W.3d 336 (Tex. 2005). Upon dissolution of a corporation, the officers and directors hold corporate assets in trust for the corporation's creditors, and a fiduciary duty to the creditors arises which obliges the directors and officers to administer the corporate assets for the benefit of the creditors. *Fagan v. La Gloria Oil & Gas Co.*, 494 S.W.2d 624, 628 (Tex.App.—Houston [14th Dist.] 1973, no writ). The breach of that duty gives rise to a cause of action against the officers and directors which can be prosecuted directly by the creditors. *Id.* McMahan cannot succeed under this doctrine as a matter of law because neither Ramirez Capital nor Wilco Data are insolvent, and McMahan is not one of their creditors.

Finally, constructive discharge occurs when an employee leaves his or her employment under circumstances that are "treated as an involuntary termination of employment." *Young v. Sw. Sav. & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975). The Fifth Circuit has explained if an "employer deliberately makes an employee's working conditions so intolerable that the employee is forced into an involuntary resignation, then the employer has encompassed a constructive discharge." *Jurgens v. EEOC*, 903 F.2d 386, 390 (5th Cir. 1990) (citation omitted). In determining whether an employee would feel forced to resign, courts consider the following factors relevant: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger [or less experienced qualified] supervisor;

(6) badgering, harassment, or humiliation by the employer calculated to encourage the employee's resignation; or (7) offers of early retirement. *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001) (citations omitted and second alteration in original). McMahan's has not pleaded any facts regarding his working conditions (Dkt. #12). Therefore, McMahan's pleadings are insufficient to state a claim for constructive discharge.

## CONCLUSION

It is therefore **ORDERED** that Plaintiffs Ramirez Capital Services LLC and Wilco Data, LLC's Par[t]ial Motion to Dismiss Counterclaims under Rule 12(b)(6) or for More Definite Statement under Rule 12(f) (Dkt. #14) is **GRANTED in part and DENIED in part.** The motion is **GRANTED** as to the breach of contract claim.

Defendant Jared McMahan is hereby permitted, within fourteen (14) days of this Order, to plead additional causes of action in lieu of his breach of contract claim, amend his answer as to counter-defendants, and amend his constructive discharge claim.

**IT IS SO ORDERED.**

SIGNED this 14th day of December, 2021.

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE